# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHAREHOLDER REPRESENTATIVE SERVICES, LLC, *a Colorado limited liability company*,

Plaintiff,

v.

FOLLETT PARENT, LP,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N25C-12-337 MAA CCLD

Submitted: May 14, 2026
Decided: May 29, 2026

*Defendant's Motion to Dismiss:*
**GRANTED in part; DENIED in part.**


## MEMORANDUM OPINION


Jaclyn C. Levy, Esquire and Samuel G. Gustafson, Esquire, of POTTER ANDERSON & CORROON LLP, Wilmington, DE, and Michael P. Conway, Esquire (Argued), of JONES DAY, Chicago, IL, *Attorneys for Plaintiff*.

Melissa N. Donimirski, Esquire, of STEVENS & LEE, Wilmington, DE, and Barry S. Pollack, Esquire and Susan R. Cooke, Esquire (Argued), of POLLACK SOLOMON DUFFY LLP, Boston, MA, *Attorneys for Defendant*.


**Adams, J.**

**INTRODUCTION**

In December 2021, Follett Parent, LP ("Parent"), through an Agreement and Plan of Merger (the "Agreement"), acquired all the issued and outstanding capital stock of Follett Corporation. Under the Agreement, Parent assumed several obligations to sell Series A and Series B Preferred Stock of Lumen, Inc., which was formerly owned by Follett Corporation. Now in dispute is whether Parent complied with these contractual obligations.

Plaintiff Shareholder Representative Services, LLC ("SRS"), the appointed Shareholder Representative under the Agreement, brings this action on behalf of the former stockholders of Follett Corporation ("Stockholders"). Pursuant to Superior Court Civil Rules 12(b)(1), 12(b)(6), and 17, Parent now moves for the Court to dismiss SRS's Complaint in its entirety.

Parent's lead argument is SRS lacks standing to pursue this action because SRS is not the real party in interest. Parent also presents substantive arguments to support dismissal of SRS's contract-based claims, including SRS's implied covenant of good faith and fair dealing claim. For the following reasons, the Court finds SRS has standing to pursue this action and can state a breach-of-contract claim. The Court finds SRS's implied covenant claim fails because SRS has not identified any gap in the Agreement to be filled by implied terms.

FACTUAL BACKGROUND

In December 2021, Follett Parent, LP ("Parent" or "Defendant") acquired all the issued and outstanding capital stock of Follett Corporation (the "Merger").[1] The Merger, which closed on February 1, 2022 (the "Closing Date"), was effectuated by the Agreement.[2] Pursuant to the Agreement, Follett Corporation merged with an existing entity to become a wholly-owned subsidiary of Parent.[3]

Prior to the Merger, Follett Corporation owned Series A and Series B Preferred Stock of Lumen, Inc. (the "Lumen Interest").[4] The Agreement contained specific provisions governing how the Stockholders would be fairly compensated for the Lumen Interest.[5] These provisions contemplated the Stockholders receiving post-closing consideration through one of two scenarios.[6]

In the first scenario, Parent would successfully sell the Lumen Interest.[7] The Agreement obligated Parent, for the first three years after the Closing Date, to use "reasonable best efforts" to consummate the sale of the Lumen Interest.[8] Unless a buyer was closely related to Parent, Parent held "sole discretion with respect to the

---

[1] D.I. 1 ["Compl."]¶ 2; Compl. Ex. A ["Agreement"] at 1.
[2] Compl. ¶¶ 21-22; Agreement.
[3] Compl. ¶ 21; Agreement at 1.
[4] Compl. ¶ 3; Agreement § 6.10 ("As of the date of this Agreement, the [Follett Corporation] indirectly owns Series A Preferred Stock and Series B Preferred Stock of Lumen, Inc.").
[5] Agreement § 6.10; Agreement Annex VI.
[6] Agreement § 6.10; Agreement Annex VI.
[7] Agreement § 6.10.
[8] *Id.*

terms and conditions" of a Lumen Interest sale.[9]  Upon selling the Lumen Interest,

Parent was obligated to deliver 75% of the proceeds, less specified costs, to the

Stockholders as post-closing consideration.[10]

In the second scenario, Parent, within thirty months after the Closing Date,

would be unsuccessful in selling the Lumen Interest.[11]  If the Lumen Interest had not

been sold within thirty months, Parent was contractually obligated to procure an

independent, fair market value assessment of the Lumen Interest.[12]  The Agreement

defined the steps Parent must take to procure the assessment, including the relevant

steps outlined below:

1. Parent, on or before the thirty-month anniversary of the Closing Date, proposes to SRS a reputable and independent valuation firm ("valuation firm") to determine the fair market value of the Lumen Interest.[13]

---

[9] *Id.* ("Parent shall have sole discretion with respect to the terms and conditions of the Lumen Sale unless such sale is to an Affiliate, officer, director, equity or debt holder, manager or family member of Parent, the Company or any of their respective Affiliates (in which case, the terms and conditions of the Lumen Sale shall be subject to the Shareholder Representative's prior written consent, which shall not be unreasonably withheld, conditioned or delayed), provided that all consideration payable for the Lumen Interest must be cash.").

[10] *Id.*  The specified costs that would offset the post-closing consideration were taxes and "costs (including valuation costs) or expenses actually incurred . . . by Parent or the [Follett Corporation]."

[11] *Id.*

[12] *Id.* ("If the Lumen Interest is not sold prior to the 30-month anniversary of the Closing Date, Parent *shall comply* with the provisions set forth in Annex VI.") (emphasis added).

[13] Agreement Annex VI ¶ 1 ("Parent shall propose in writing to the Shareholder Representative on or before the 30-month anniversary of the Closing Date, a reputable independent third party valuation firm to be engaged by Parent or the Company to determine the Fair Market Value (as defined below) of the Lumen Interest in accordance with the terms of this Annex (such valuation, the 'FMV Valuation.')").

2. Parent retains the proposed valuation firm if SRS does not object to the proposed valuation firm within fifteen days.[14]

3. Parent uses reasonable best efforts to provide requested information to the valuation firm.[15]

4. Within five business days of receiving the valuation firm's assessment of the Lumen Interest's fair market value, Parent provides 75% of the assessment, less specified costs, to the Stockholders. If a sale of the Lumen Interest is consummated before the fair market value assessment is received, 75% of the sale proceeds, less specified costs, must be delivered to Stockholders.[16]

Following the Merger, Parent assumed control over the Lumen Interest.[17]

After almost thirty months had passed since the Closing Date, SRS requested Parent provide a description of efforts Parent had taken to sell the Lumen Interest.[18] Parent

---

[14] *Id.* ¶ 2 ("If the Shareholder Representative does not object in writing to the valuation firm proposed by Parent within 15 days after receipt of such notice, Parent or the Company shall retain such valuation firm for the FMV Valuation. If the Shareholder Representative timely objects in writing to the valuation firm proposed by Parent, Parent and the Shareholder Representative shall mutually agree on a valuation firm for the FMV as promptly as practicable thereafter. The valuation firm retained by Parent or the Company for the FMV Valuation in accordance with this Annex, the 'Valuation Firm.')").

[15] *Id.* ¶ 3 ("Parent shall use reasonable best efforts to provide, or to cause Lumen, Inc. to provide, such information as may be requested by the Valuation Firm in connection with the FMV Valuation.").

[16] *Id.* ¶ 7 ("Within five Business Days after the Valuation Firm delivers the FMV Value to Parent and the Shareholder Representative, unless a Lumen Sale has been consummated prior to the date thereof (in which case Parent shall pay 75% of the net consideration therefrom to the Paying Agent as contemplated by Section 6.10 of the Agreement, Parent shall pay or cause to be paid to the Paying Agent, cash (the "Lumen Cash Out Amount") equal to 75% of the FMV Value less the sum of (a) 75% of the fees and expenses actually paid by Parent or the Company to the Valuation Firm in connection with the FMV Valuation and (b) an amount equal to 75% of any taxes that would be payable by the Parent or the Company if the Lumen Interest had been sold by the Parent or the Company for the FMV Value.").

[17] Compl. ¶ 23.

[18] The thirty-month anniversary of the Closing Date was August 1, 2024. *Id.* ¶ 28. On July 19, 2024, SRS wrote Parent asking about the status of the Lumen Sale. *Id.* ¶ 27. When SRS received

never provided the description, and thirty months passed post-closing without Parent selling the Lumen Interest.[19]

Parent subsequently proposed Ankura as the valuation firm that would conduct the fair market value assessment of the Lumen Interest.[20] SRS conducted due diligence and agreed to the selection on August 19, 2024.[21] Ankura circulated a draft engagement letter shortly after, which SRS approved if one change was made.[22] Parent never approved the change or the engagement letter.[23]

By October 1, 2024, Parent had not retained Ankura despite indications Ankura was ready to begin the valuation process.[24] When Ankura again inquired about starting the valuation process, Parent responded: "the parties . . . are considering their approaches."[25] SRS, however, had repeatedly asked Parent to retain Ankura by this point.[26]

On October 30, 2024, Parent reversed course and expressed Parent's belief evaluation expenses would "burden a sale process prematurely."[27] SRS, in response,

---

no response, SRS sent a follow-up email on July 23, 2024, which requested the description of the efforts Parent has taken to sell the Lumen Interest to that point. *Id.*

[19] *Id.* ¶¶ 27, 29.

[20] *Id.* ¶ 30.

[21] *Id.*

[22] *Id.* ¶ 32. SRS sought for the letter to incorporate Agreement Annex VI and for the engagement to allow work product sharing between SRS and SRS's counsel.

[23] *Id.* ¶ 33.

[24] *Id.* ¶¶ 33-34.

[25] *Id.* ¶ 34.

[26] *Id.*

[27] *Id.* ¶ 35.

reminded Parent of its obligation to proceed with the valuation process.[28] Despite this reminder, however, Parent had still not retained Ankura or any other valuation firm by the start of December 2024.[29] When asked whether Parent would maintain its refusal to continue the valuation process, Parent responded it hoped "to have a response in the next day or so."[30] Parent would later inform SRS it was not pursuing the valuation process.[31]

On December 13, 2024, Parent notified SRS that Parent had received an offer to buy the Lumen Interest for $600,000.[32] Just over a month later, Parent reported it received another offer to purchase the Lumen Interest for $2,500,000.[33] SRS quickly objected to the new offer, viewing the proposed deal as a "fire sale" resulting from months of inaction by Parent.[34] Parent, despite SRS's objections, completed the sale nine days after SRS was notified of the offer.[35]

On February 20, 2025, Parent informed SRS it considered costs of "responding to various questions from [SRS], including explanations of the sale

---

[28] *Id.*
[29] *Id.* ¶ 36.
[30] *Id.*
[31] *Id.* ¶ 38.
[32] *Id.* ¶ 37. According to SRS, this offered purchase price was "a tiny fraction of any reasonable [fair market value] estimation of the Lumen Interest." *Id.*
[33] *Id.* ¶ 41. According to SRS, this offered purchase price "was still at least four to five times less than the fair market value of the Lumen Interest." *Id.* The offer was obtained from the Lumen CEO. *Id.* ¶ 12.
[34] *Id.* ¶¶ 43, 46.
[35] *Id.* ¶ 46. The sale followed months of unfulfilled requests to provide evidence of reasonable best efforts taken to sell the Lumen Interest. *Id.* ¶¶ 27, 42.

process[,]" as an offsetting sales expense.[36]  Parent also requested SRS send a "binding writing" indicating SRS "will not bring litigation in relation to the Lumen Sale."[37]  Parent expressed without such a writing, Parent would send net proceeds to SRS incrementally and deduct "from those proceeds its future litigation expenses from defending its breaches of the Agreement."[38]

On February 28, 2025, SRS again requested documentation of Parent's efforts to sell the Lumen Interest.[39]  SRS requested Parent present several forms of documentation, which Parent expressly refused to provide.[40]  According to SRS, Parent's alleged breaches of the Agreement were willful, malicious, and done with intent to cause injury to SRS.[41]

On December 17, 2025, SRS filed this action against Parent, seeking four counts.[42]  Count I is a breach-of-contract claim alleging Parent breached Section 6.10 of the Agreement.[43]  Count II is a breach-of-contract claim alleging Parent breached Section 6.10 and Annex VI of the Agreement.[44]  Count III is a declaratory judgment

---

[36] *Id.* ¶ 48.  In other words, Parent intended to deduct these expenses from the sale proceeds owed to Stockholders.
[37] *Id.* ¶ 49.
[38] *Id.*
[39] *Id.* ¶ 50.
[40] *Id.* ¶¶ 50-51.
[41] *Id.* ¶ 52.  Relevant to one of Parent's main arguments in favor of dismissal, SRS says it, not the Stockholders, was harmed in Paragraph 52.  *Id.*  Given the proceeding paragraphs, however, it is reasonable to infer SRS meant the Stockholders SRS represents.
[42] Compl.
[43] *Id.* ¶¶ 53-60.
[44] *Id.* ¶¶ 61-68.

claim seeking determination of whether attorneys' fees are costs and expenses deductible from Lumen Interest proceeds.[45]  Count IV is an implied covenant of good faith and fair dealing claim alleging Parent breached an implied covenant to fulfill Agreement obligations in good faith.[46]

On January 27, 2026, Parent filed a motion to dismiss the Complaint in its entirety.[47]  On March 4, 2026, SRS filed an Answering Brief in opposition to Parent's motion to dismiss.[48]  On March 25, 2026, Parent filed a Reply Brief.[49]

## STANDARD OF REVIEW

When a party brings a motion to dismiss for lack of standing pursuant to Rules 12(b)(1) and 12(b)(6), the Court's determination of which rule applies is determined by examining whether "the issue of standing is related to the merits."[50]  When the defendant argues relief cannot be granted because the plaintiff "has not pleaded an essential element of the claim, the motion is properly decided under Rule 12(b)(6)."[51]  When the defendant argues the court "would not have the authority to

---

[45] *Id.* ¶¶ 69-77.
[46] *Id.* ¶¶ 78-86.
[47] D.I. 7 ["Parent OB"].
[48] D.I. 10 ["SRS Ans. Br."].
[49] D.I. 12 ["Parent Reply Br."].
[50] *In re COVID-Related Restrictions on Religious Servs.*, 302 A.3d 464, 478 (Del. Super. 2023), *aff'd*, 326 A.3d 626 (Del. 2024) (citations omitted).
[51] *Id.* (citing *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285 (Del. 2007)).

grant relief requested to *any* plaintiff," the motion is properly decided under Rule 12(b)(1).[52]

The "standards governing a motion to dismiss for failure to state a claim are well settled: (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[53]

Superior Court Civil Rule 17 requires "every action . . . be prosecuted in the name of the real party in interest."[54] "[A] party with whom or in whose name a contract has been made for the benefit of another . . . may sue in that person's own name without joining the party for whose benefit the action is brought."[55] "The contractual appointment of a shareholder representative to bring certain actions makes that representative the real party in interest in those actions."[56]

---

[52] *Id.*

[53] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-897 (Del. 2002) (citation omitted).

[54] Super. Ct. Civ. R. 17.

[55] *Id.*

[56] *Fortis Advisors LLC v. Allergan W.C. Hldg. Inc.*, 2020 WL 2498068, at *3 (Del. Ch. May 14, 2020) (citing *Coughlan v. NXP B.V.*, 2010 WL 1531596, at *2-3 (Del. Ch. Apr. 15, 2010)).

## LEGAL ANALYSIS

### A. SRS IS THE REAL PARTY IN INTEREST AND HAS STANDING TO PURSUE THE CLAIMS BROUGHT IN THE COMPLAINT.

The Court first addresses Parent's lead argument that SRS, based on the pleadings, lacks standing to pursue the claims in this action. Parent specifically alleges SRS has not established SRS is the real party in interest.[57] Parent presents a two-pronged argument: (1) the Complaint is devoid of facts sufficient to establish SRS as the real party in interest;[58] and (2) SRS lacks authority to bring claims in its own name.[59] For the following reasons, the Court finds SRS, as appointed Shareholder Representative for former Follett Corporation Stockholders, is the real party in interest with standing to pursue this action.

Before addressing the merits of Parent's arguments, the Court must determine which rule, 12(b)(1) or 12(b)(6), applies to Parent's challenge to SRS's standing. During oral argument, Parent admitted it was not challenging whether a contractually appointed stockholder representative is the real party in interest when bringing authorized claims on behalf of stockholders. Nor would Parent be successful in making such an argument.[60]

---

[57] Parent OB at 13-16; Parent Reply Br. at 2-7.
[58] Parent OB at 13-15; Parent Reply Br. at 2-4.
[59] Parent OB at 15-16; Parent Reply Br. at 4-7.
[60] Delaware courts have repeatedly held contractually appointed stockholder representatives are the real parties in interest when pursuing authorized claims on behalf of stockholders. *See Fortis*, 2020 WL 2498068, at *3 ("The contractual appointment of a shareholder representative to bring certain actions makes that representative the real party in interest in those actions."); *Coughlan*,

10

Parent's challenge is instead based upon alleged deficiencies in SRS's own pleadings and contractual interpretations of the Agreement. In other words, Parent's challenge is "related to the merits," not on the Court's "authority to grant [the] relief requested to *any* plaintiff."[61] The Court therefore finds Rule 12(b)(6) applies to Parent's standing arguments.

The Court now proceeds to the merits of Parent's standing arguments. For SRS to be the real party in interest for this litigation, the Court must answer two questions in the affirmative. The first question is whether the Agreement authorizes SRS to bring the claims in this action. The second question is whether SRS has sufficiently pled that SRS is the contractually appointed Shareholder Representative authorized to bring, on behalf of the Stockholders, the claims in this action.

The Court first examines whether the Agreement authorizes SRS to bring the claims in this action. This is a two-part inquiry. The Court must first find the Agreement provided a mechanism for Stockholders to delegate SRS authority to act on their behalf. The Court must then find the Agreement authorizes SRS to bring

---

2010 WL 1531596, at \*2-3 ("Coughlan, as Stockholders' Representative, is a party in whose name a contract has been made for the benefit of the GloNav Stockholders, who are admittedly the real parties in interest."). In fact, this structure of representation is often encouraged, as it promotes judicial efficiency by streamlining the adjudication of disputes. *Fortis*, 2020 WL 2498068, at \*3 ("This structure is helpful to both buyers and sellers, as it enables each side to resolve post-closing disputes efficiently. Buyers also benefit from the fact that the structure makes a judgment against the representative binding on all stockholders, eliminating the risk of inconsistent judgments.") (cleaned up).

[61] *In re COVID-Related Restrictions*, 302 A.3d at 478 (citations omitted).

11

the claims at issue in its capacity as Shareholder Representative. The answer to both inquiries, and to the larger question of whether the Agreement authorizes SRS to bring the claims in this action, is yes.

Neither Party disputes the Agreement provided a mechanism for the Stockholders to delegate SRS authority to act on their behalf.[62] Under Section 5.5(a) of the Agreement, Stockholders are deemed to have appointed SRS as their Shareholder Representative when Stockholders either vote in favor of the Merger or receive the benefits of it.[63]

The Parties do dispute whether the Agreement grants SRS, in its capacity as Shareholder Representative, authority to pursue the claims brought in this action.[64] The Agreement does. Under the Agreement, a Shareholder Representative is authorized to act as a Stockholder's "agent, attorney-in-fact[,] and representative."[65] A Shareholder Representative is also authorized to "engag[e] attorneys . . . on behalf of the [Stockholders] in connection with th[e] Agreement" and "tak[e] all such other actions . . . which are necessary or appropriate under th[e] Agreement."[66]

This language is extremely broad and sweeping. It authorizes SRS, as Shareholder Representative, to take a variety of actions necessary to enforcing the

---

[62] Parent Reply Br. at 4; SRS Ans. Br. at 4-5.
[63] Agreement § 5.5(a).
[64] Parent OB at 15-16; Parent Reply Br. at 4; SRS Ans. Br. at 5-6.
[65] Agreement § 5.5(a).
[66] *Id.*

Agreement or resolving post-closing disputes. The Court finds a plain reading of Section 5.5(a) makes it at least reasonably conceivable SRS is authorized to pursue the claims brought in this action.

The Court next examines whether SRS has sufficiently pled that SRS is the contractually appointed Shareholder Representative authorized to bring, on behalf of former Follett Corporation Stockholders, the claims in this action. The answer is yes. Delaware law has long recognized our courts look to substance over form when evaluating pleadings.[67] This practice embraces the principle "mere matters of form in labelling pleadings are of no importance; the contents of the pleadings are looked to in seeking that justice is done."[68]

Parent presents hyper technical arguments that ask the Court to abandon this long-standing practice and rule on form over substance. Parent first argues SRS impermissibly brings claims in its own name.[69] Parent then argues, in the alternative, SRS has failed to sufficiently identify the Stockholders it represents.[70] For the following reasons, the Court is unpersuaded by these arguments.

The Court starts with the argument SRS impermissibly brings claims in its own name. To be clear, the caption of the Complaint does reflect claims are brought

---

[67] *Johnson v. Hamilton*, 185 A.2d 70, 72 (Del. Super. Oct. 18, 1962).
[68] *Id.*
[69] Parent OB at 15-16; Parent Reply Br. at 4-7.
[70] Parent OB at 13-14; Parent Reply Br. at 2-4.

in SRS's own name.[71]  But the remainer of the Complaint simply does not reflect this reality.  On the first page of the Complaint, just below the case caption, SRS clearly identifies itself as "*appointed representative* of the former shareholders of the Follett Corporation."[72]

The counts in the Complaint reflect this representative nature.  SRS does not allege personal harm.  SRS instead pleads three times "Parent's breach has harmed the Shareholders, *whom SRS represents*."[73]  SRS also pleads several times "[t]he *Shareholders are entitled* to compensatory damages."[74]  The substance of these pleadings reflects, especially collectively, SRS is bringing claims on behalf of Stockholders, not on its own behalf.

While Parent's remaining argument is largely mooted by the discussion above, the Court nonetheless addresses it briefly here.  Parent focuses on SRS not providing a voting record for the Merger and failing to join individual Stockholders to the action.[75]  These arguments fair no better than the first argument.  Delaware law does not require a stockholder representative join individual stockholders,[76] nor does

---

[71] *See generally* Compl. (showing that the caption lists as plaintiff "Shareholder Representative Services LLC, a Colorado limited liability company.")
[72] Compl. (emphasis added).
[73] *Id.* ¶¶ 58, 66, 84.
[74] *Id.* ¶¶ 59, 67, 85.
[75] Parent OB at 15-16; Parent Reply Br. at 2.
[76] *Coughlan*, 2010 WL 1531596, at *2-3 ("Coughlan, as Stockholders' Representative, is a party in whose name a contract has been made for the benefit of the GloNav Stockholders, who are admittedly the real parties in interest.  Accordingly, she may bring this action *without joining GloNav Stockholders*.") (emphasis added).

Parent provide sufficient support for SRS being required to identify all individual Stockholders—especially at the pleading stage.

SRS pled in the Complaint SRS was appointed Shareholder Representation for former Follett Corporation Stockholders.[77] SRS incorporated by reference the Agreement, which articulates how SRS became a Shareholder Representative.[78] Because one such way was through voting in favor of the Merger,[79] and because the Merger, which was conditioned upon Stockholder approval, was completed, the Court can make a reasonable inference SRS represents at least some of the former Follet Corporation Stockholders. These facts are enough to properly establish SRS's representative status in this action.

The Court therefore rejects Parent's hyper technical arguments, which naturally implicate a form over substance approach to evaluating pleadings. The substance of the Complaint, when viewed as a whole, reflects SRS is a valid Shareholder Representative bringing claims on behalf of former Follett Corporation Stockholders.

The Court finds SRS has sufficiently plead SRS is the contractually appointed Shareholder Representative for former Follett Corporation Stockholders. The Court

---

[77] Compl. ¶ 2.
[78] Agreement § 5.5(a).
[79] *Id.*

15

also finds the Agreement authorizes SRS to bring this action in its capacity as Shareholder Representative.  SRS is thus the real party in interest for this litigation.

## B.  PARENT'S MOTION TO DISMISS COUNT I IS DENIED.

The Court next discusses Parent's motion to dismiss Count I of the Complaint.[80]  Count I is a breach-of-contract claim concerning Parent's alleged failure to use reasonable best efforts to sell the Lumen Interest.[81]  SRS specifically alleges Parent breached Section 6.10 of the Agreement.[82]  Section 6.10 provides, in relevant part: "[f]ollowing the Closing until the third anniversary of the Closing Date, Parent shall . . . use reasonable best efforts to consummate the Lumen Sale."[83]

"In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract . . . second, the breach of an obligation imposed by that contract; and third, . . . damage to the plaintiff."[84]  The validity of the Agreement and whether damages have been alleged is not in dispute.[85]  What is in dispute under Count I is whether Parent breached Section 6.10 by failing to use reasonable best efforts when Parent was contractually obligated to do so.

---

[80] Compl. ¶¶ 53-60.
[81] *Id.* ¶ 57.
[82] *Id.* ¶¶ 56-57.
[83] *Id.* ¶ 56; Agreement § 6.10.  The term "reasonable best efforts" is not defined under the Agreement. *See generally* Agreement (failing to define "reasonable best efforts").
[84] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citations omitted).
[85] *See generally* Parent OB; SRS Ans. Br.; Parent Reply Br. (showing that neither party challenges the enforceability of the Agreement or that damages have not been plead).

16

Delaware courts have previously held determining whether a party used reasonable best efforts "is an inherently factual inquiry that is not readily amenable to resolution at the pleadings stage."[86] An exception is where a claim for breach of a reasonable-best-efforts obligation is not found to be reasonably conceivable under any set of circumstances susceptible of proof.[87]

The Court finds such an exception does not apply in this case. SRS pleads multiple facts making it reasonably conceivable Parent did not use reasonable best efforts to sell the Lumen Interest at all relevant times. For example, SRS pleads Parent has refused, on multiple occasions, to provide evidence Parent used reasonable best efforts.[88]

SRS also pleads Parent received no offers to purchase the Lumen Interest in the first thirty months after closing, but then received two offers within about a month starting in late 2024.[89] A reasonable inference can be drawn Parent was not

[86] *In re WeWork Litig.*, 2020 WL 6375438, at *9 (Del. Ch. Oct. 30, 2020) (citing *Cooper Tire & Rubber Co. v. Apollo (Mauritius) Hldgs. Pvt. Ltd.*, 2013 WL 5787958, at *6 (Del. Ch. Oct. 25, 2013); *Crum & Crum Enters., Inc. v. NDC of Cal., LP*, 2010 WL 4668456, at *5 (D. Del. Nov. 3, 2020); *Brown v. Buschman Co.*, 2002 WL 389139, at *85 (D. Del. Mar. 12, 2002)).
[87] *Id.*
[88] Compl. ¶¶ 27, 42, 50-51. These consistent refusals may alone justify, at this stage, the Court rejecting Parent's argument Parent exercised reasonable best efforts in selling the Lumen Interest. Delaware courts are hesitant to find a party acted with reasonable best efforts when the party is found to have failed to adequately work with counterparties. *See, e.g.*, *Snow Phipps Grp., LLC v. KCAKE Acq., Inc.*, 2021 WL 1714202, at *48 (Del. Ch. Apr. 30, 2021) ("Moreover, this court has been hesitant to find that a party took reasonable best efforts to solve a problem where the party "did not raise their concerns before filing suit, did not work with their counterparties, and appeared to have manufactured issues solely for purposes of litigation.").
[89] *Id.* ¶¶ 28-29, 37, 41.

using the same efforts to sell the Lumen Interest in the first thirty months post-closing as Parent was using when multiple offers were received.

A final example is the two offers Parent received for the Lumen Interest being far below fair market value.[90] Parent is correct an obligation to use "reasonable best efforts" does not mean it must procure the highest possible offer for a sale.[91] When the only two offers received were allegedly far below fair market value, however, a reasonable inference can be drawn that Parent did not use reasonable best efforts to sell the Lumen Interest.

During oral argument, Parent attempted to distinguish the language of Section 6.10 from a typical reasonable best efforts clause. Parent argued Section 6.10 only imposed an obligation to use reasonable best efforts to *consummate* a transaction. In Parent's view, this language limits the obligation to the sale transaction itself, not to the actions leading up to the sale transaction. Because Parent did in fact consummate a sale of the Lumen Interest, Parent therefore contends it cannot be in breach of Section 6.10.

As SRS points out, however, Parent's reading of Section 6.10 is extremely narrow and would represent a substantial deviation from how a typical reasonable best efforts clause operates. SRS's reading of Section 6.10, which is broader and

---

[90] *Id.* ¶¶ 37, 41.
[91] Parent Reply Br. at 8.

more closely aligns to typical reasonable best efforts clauses, is just as reasonable. Because the Court is not permitted to choose between two reasonable interpretations at the pleadings stage,[92] resolution of the meaning of Section 6.10 must occur in further proceedings.

The Court finds, based on the pleadings, it is reasonably conceivable Parent did not use reasonable best efforts to sell the Lumen Interest when it was contractually obligated to do so. Because determining whether Parent used reasonable best efforts is a factual inquiry inappropriate for resolution at the motion-to-dismiss phase, Parent's motion to dismiss Count I is **DENIED**.

## C. PARENT'S MOTION TO DISMISS COUNT II IS DENIED.

The Court proceeds to discuss Parent's motion to dismiss Count II of the Complaint.[93] Count II is a breach-of-contract claim concerning Parent's alleged failure to obtain a valuation of and subsequently pay consideration for the Lumen Interest.[94] SRS specifically alleges Parent breached Section 6.10 and Annex VI of the Agreement.[95] The Court has already stated the standard to survive a motion to dismiss a breach-of-contract claim and will not repeat it here.

---

[92] *Vanderbilt Income and Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) ("On a motion to dismiss for failure to state a claim, a trial court cannot choose between two differing reasonable interpretations of ambiguous documents.").
[93] Compl. ¶¶ 61-68.
[94] *Id.* ¶ 65.
[95] *Id.* ¶¶ 64-65.

Count II involves another dispute over whether Parent breached a Section 6.10 obligation. In addition to imposing on Parent the "reasonable best efforts" obligation discussed for Count I, Section 6.10 also provides the following requirement: "If the Lumen Interest is not sold prior to the 30-month anniversary of the Closing Date, Parent shall comply with the provisions set forth in Annex VI."[96] Annex VI governs the required steps to obtaining a valuation of the Lumen Interest.[97]

Before the Court discusses the terms of Annex VI, the Court first addresses the Section 6.10 language just quoted above. The language is clear and unambiguous; should the Lumen interest not be sold within thirty months of the Closing Date, Parent *shall comply* with the terms outlined in Annex VI. The words "*shall comply*" are mandatory, not discretionary. Parent was therefore contractually obligated to comply with Annex VI when the Lumen Interest was not sold within thirty months of the Closing Date.[98]

To resolve Parent's motion to dismiss Count II, the Court must therefore determine whether it is reasonably conceivable Parent breached the terms of Annex VI. The Court finds that it is. Once Annex VI applies, it first requires Parent to propose to SRS, in writing, a "reputable independent third party valuation firm to . .

---

[96] Agreement § 6.10.
[97] Agreement Annex VI.
[98] Compl. ¶¶ 28-29.

. determine the [f]air [m]arket [v]alue of the Lumen Interest."[99]  SRS has plead Parent proposed Ankura as the valuation firm.[100]

Annex VI then provides Parent "shall retain such valuation firm for the [fair market valuation]" if SRS "does not object in writing to the valuation firm proposed . . . within 15 days after receipt of such notice."[101]  The Court again highlights "*shall retain*" is mandatory and not discretionary.  SRS has pled it did not object to Ankura assessing the fair market value on the Lumen Interest.[102]  SRS has also pled Parent never retained Ankura and later expressly informed SRS it would not obtain any valuation firm.[103]

These pleadings alone establish it is reasonably conceivable Parent breached Annex VI.  Parent argues Annex VI allowed Parent to exercise its "sole discretion" in selling the Lumen Interest any time before a fair market valuation of the Lumen Interest was received.[104]  But Parent fails to address the language in Annex VI requiring Parent to retain a valuation firm after proposing the firm without objection.

Because it is reasonably conceivable Parent breached the terms of Annex VI, and thus breached Section 6.10, Parent's motion to dismiss count II is **DENIED**.

---

[99] Agreement Annex VI ¶ 1.
[100] Compl. ¶ 30.
[101] Agreement Annex VI ¶ 2.
[102] Compl. ¶ 30.
[103] *Id.* ¶¶ 36, 38.
[104] Parent OB at 17.

**D. PARENT'S MOTION TO DISMISS COUNT III IS DENIED.**

The Court turns to discuss Parent's motion to dismiss Count III of the Complaint.[105] Count III is a declaratory judgment claim concerning whether Section 6.10 authorizes Parent to deduct, from Lumen Interest proceeds, Parent's attorneys' fees from defending alleged Agreement breaches.[106] SRS seeks declaratory judgment these fees should not be deducted from the Lumen Interest proceeds owed to Stockholders.[107]

"The judiciary's power to issue a declaratory judgment is limited by the well-settled principle that a declaratory judgment must 'address an actual controversy between parties with affected rights.'"[108] A case or controversy exists when the following four requirements are met:

> "(1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; [and] (4) the issue involved in the controversy must be ripe for judicial determination."[109]

---

[105] Compl. ¶¶ 69-77.
[106] *Id.* ¶ 77.
[107] *Id.*
[108] *In re COVID-Related Restrictions*, 326 A.3d at 642 (internal quotations omitted) (quoting *Gower v. Trux, Inc.*, 2022 WL 534204, at *12 (Del. Ch. Feb. 23, 2022)).
[109] *Id.* (citing *Rollins Int'l v. Int'l Hydronics Corp.*, 303 A.2d 660, 662-63 (Del. 1973)).

Parent only challenges SRS's Count III does not meet the ripeness requirement.[110] For the following reasons, the Court finds Count III is ripe and a case or controversy exists for declaratory judgment to be appropriate.

The Parties again ask the Court to examine language found in Section 6.10. Section 6.10 provides, in relevant part: "[t]he consideration paid in connection with a sale of the Lumen Interest . . . net of the Taxes, costs (including valuation costs) or expenses actually incurred . . . by Parent . . . to consummate the Lumen Sale, shall be allocated 25% to Parent and 75% to the former [Stock]holders."[111] At issue is the scope of "costs" and "expenses" to consummate the Lumen Sale.

The Court does not find, as Parent suggests, SRS's declaratory judgment claim "rises and falls" with SRS's breach-of-contract-claims in Counts I and II.[112] SRS seeks declaratory judgment, under Section 6.10, that legal fees incurred in connection with the Lumen Sale are not within the scope of "cost" or "expenses" Parent is entitled to withhold from proceeds.[113]

Whether Counts I and II are ultimately successful has no bearing on the resolution of this declaratory judgment claim. An actual and ripe controversy exists as to whether, based on Section 6.10, Stockholders are entitled to Lumen Interest

---

[110] Parent OB at 19-20.
[111] Agreement § 6.10.
[112] Parent OB at 19.
[113] Compl. ¶ 77.

23

proceeds now or after the current disputes between the Parties are resolved. The Court must interpret the language of Section 6.10 to resolve Count III, and the Court need not wait until Counts I and II are resolved to do so.

The Court now moves to discuss the merits of Count III. It is well-settled the Court "cannot choose between two differing reasonable interpretations of ambiguous provisions."[114] Contractual language is "ambiguous if it is susceptible to more than one reasonable interpretation."[115] An interpretation is unreasonable "if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract."[116]

The Court finds ambiguous the Section 6.10 language governing the costs and expenses Parent can withhold from the Lumen Interest proceeds. The Court finds the phrase "to consummate the Lumen Sale" to be especially ambiguous.[117] There are at least two reasonable interpretations of this phrase.

One reasonable interpretation is legal fees, which result solely from post-closing disputes of the Lumen Interest Sale, fall outside the costs and expenses contemplated in Section 6.10. Under this interpretation, the underlying disputes generating the legal fees at issue do nothing to further or hinder the consummation

---

[114] *LGM Hldgs., LLC v. Schurder*, 340 A.3d 1134, 1144 (Del. 2025) (internal quotations omitted) (quoting *VLIW Tech.*, 840 A.2d at 615).

[115] *Id.* (internal quotations omitted) (quoting *Terell v. Kiromic Biopharma, Inc.*, 338 A.3d 1272, 1275-77 (Del. Jan. 21, 2025)).

[116] *Id.* (internal quotations omitted) (quoting *Terell*, 338 A.3d at 1275-77).

[117] Agreement § 6.10.

of the Lumen Sale. This reading is narrow and essentially only allows recovery of costs and expenses resulting from the sale transaction itself.

Another reasonable interpretation is Section 6.10 contemplates Parent recovering all costs or expenses relating to the sale of the Lumen Interest. Under this interpretation, Parent would essentially be indemnified for every related cost or expense incurred because of the Lumen Sale—even those incurred after the sale was complete. This reading is broad, which matches the broad nature of the terms "costs" and "expenses."[118]

Because the Court finds the relevant language in Section 6.10 ambiguous, and because the Court is prohibited from choosing one reasonable interpretation over another at the motion-to-dismiss phase, Parent's motion to dismiss Count III is **DENIED.**

### E. PARENT'S MOTION TO DISMISS COUNT IV IS GRANTED.

The Court finally discusses Parent's motion to dismiss Count IV of the Complaint.[119] Count IV is an implied covenant of good faith and fair dealing claim concerning Parent's alleged breach of an implied covenant to perform, in good faith, Parent's Agreement obligations.[120] SRS specifically alleges Parent breached implied covenants by "failing to exercise good faith in failing to pursue a bona fide sale

---

[118] *Id.*
[119] Compl. ¶¶ 78-86.
[120] *Id.* ¶ 82.

process of the Lumen [I]nterest and selling the Lumen Interest at well below its fair market value."[121]

The implied covenant of good faith and fair dealing (the "Implied Covenant") is "the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement."[122] The Implied Covenant is inherent in every contract and cannot be eliminated.[123] Despite its widespread presence, however, the Implied Covenant is "a limited and extraordinary legal remedy."[124]

To prevail on an Implied Covenant claim, a plaintiff must prove "a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[125] These elements parallel a claim for breach of an express contract provision, except the operative provision is implied.[126]

When presented with an Implied Covenant claim, Courts must "first [] engage in the process of contract construction to determine [if] there is a gap to be filled."[127] Courts assess whether contract language "expressly covers a particular issue" or

---

[121] *Id.* ¶ 83.
[122] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 183 (Del. Ch. 2014).
[123] *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 458 (Del. Ch. 2023).
[124] *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)).
[125] *Cygnus*, 302 A.3d at 458 (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 1998 WL 842316, at *1 (Del Ch. Nov. 10, 1998)).
[126] *Id.*
[127] *Allen*, 113 A.3d at 183 (citing Mohsen Manesh, *Express Contract Terms and the Implied Contractual Covenant of Delaware Law*, 38 DEL. J. CORP. L. 1, 19 (2013)).

whether "the contract is silent on the issue."[128] The Implied Covenant only applies when the contract is truly silent on the issue at hand, as "[t]he [I]mplied [C]ovenant will not infer language that contradicts a clear exercise of a contractual right."[129]

The Court starts analysis of Count IV with the instructive precedent set in *Fortis Advisors LLC v. Dialog Semiconductor PLC*.[130] *Dialog* involved a post-closing dispute over earnout payments and efforts used to achieve them.[131] The plaintiff brought a claim for breach of the reasonable best efforts clause, alleging the defendant had breached the clause by taking or failing to take six actions.[132] The plaintiff also brought, in the alternative, an Implied Covenant claim.[133] Under this claim, plaintiff alleged the defendant breached the Implied Covenant by taking or failing to take the same six actions.[134]

The Court of Chancery dismissed the plaintiff's Implied Covenant claim because the plaintiff had failed to identify a gap to be filled in the relevant agreement.[135] Instead, the Court of Chancery found the plaintiff simply mimicked the language of the breach-of-contract claim.[136] The Court of Chancery also held

---

[128] *Id.*
[129] *Id.* (citing *Nemar v. Shrader*, 991 A.2d at 1127).
[130] 2015 WL 401371 (Del. Ch. Jan. 30, 2015).
[131] *Id.* at *1.
[132] *Id.* at *4.
[133] *Id.*
[134] *Id.*
[135] *Id.* at *5.
[136] *Id.*

without such a gap identified, it was inappropriate to allow the Implied Covenant claim to remain as an alternative to the plaintiff's breach-of-contract claim.[137]

The Court finds a similar situation occurring with Count IV. The only difference between Count I and Count IV, which concern the *exact same* conduct of Parent, is Count IV alleges the conduct was not done in good faith. The problem here, as was the case in *Dialog*, is SRS has not identified a gap to be filled in the Agreement. SRS rather seeks to either supplant or add to an existing standard for conduct already expressly addressed in the Agreement.[138] This makes Counts I and IV duplicative.

Because the Court finds the Agreement already expressly provides the standard Parent must meet to sell the Lumen Interest, and because the standards of reasonable best efforts and good faith are duplicative, Parent's motion to dismiss Count IV is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[137] *Id.*

[138] Agreement § 6.10.